**NOT YET SCHEDULED FOR ORAL ARGUMENT**

**No. 26-5235**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

HERITAGE FOUNDATION, *et al.*,
　　　　　　　　　　　Plaintiffs-Appellees,
v.
UNITED STATES DEPARTMENT OF JUSTICE,
　　　　　　　　　　　Defendant-Appellee,
&
JOSEPH R. BIDEN, JR.,
　　　Defendant-Intervenor-Appellant.

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**RESPONSE TO EMERGENCY MOTION
FOR AN INJUNCTION PENDING APPEAL**

———————————

　　　　　　　　　BRETT A. SHUMATE
　　　　　　　　　　*Assistant Attorney General*

　　　　　　　　　DANIEL TENNY
　　　　　　　　　SEAN R. JANDA
　　　　　　　　　*Attorneys, Appellate Staff*
　　　　　　　　　*Civil Division, Room 7260*
　　　　　　　　　*U.S. Department of Justice*
　　　　　　　　　*950 Pennsylvania Avenue NW*
　　　　　　　　　*Washington, DC 20530*
　　　　　　　　　*202-514-3388*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION.................................................................................. 1

STATEMENT ...................................................................................... 4

ARGUMENT ...................................................................................... 9

I.     Biden Is Not Likely to Succeed on the Merits............................10

       A.     The Government's Intended Disclosure Is Lawful.....................10

       B.     Biden's Attempt to Seek De Novo Review of FOIA
              Disclosures and an Injunction to Enforce the Privacy Act
              Is Misguided .................................................................15

II.    The Remaining Factors Counsel Against an Injunction Pending
       Appeal ..........................................................................24

CONCLUSION....................................................................................27

CERTIFICATE OF COMPLIANCE

## INTRODUCTION

In 2024, Special Counsel Robert K. Hur released a report detailing his investigation into then-President Biden's handling of classified information. Hur identified evidence that Biden had retained and disclosed classified information but determined that criminal charges were unwarranted, in part because it would have been difficult to prove the requisite mens rea given Biden's "diminished faculties and faulty memory." Special Counsel Robert K. Hur, *Report on the Investigation Into Unauthorized Removal, Retention, and Disclosure of Classified Documents Discovered at Locations Including the Penn Biden Center and the Delaware Private Residence of President Joseph R. Biden, Jr.* 248 (Feb. 2024), https://perma.cc/ZB6E-NYKR (Hur Report).

Central to Hur's determinations were recordings and associated transcripts—which Hur had curated from a larger set—reflecting Biden's conversations with a ghostwriter in 2016 and 2017. Hur concluded that the best case for any charges would rely on those materials, which reflect Biden's disclosure of classified information. But Hur also concluded that the materials reflected substantial limitations on Biden's memory, which would have made obtaining a conviction difficult.

Hur's report garnered significant attention, and plaintiffs submitted a FOIA request for the relevant transcripts and recordings. During the Biden Administration, the Department of Justice determined to withhold the recordings and to almost entirely withhold the transcripts. Earlier this year, however, the Department reconsidered that determination.

As the Department has explained, this is an unusual case. Given the high-profile nature of the investigation and the inherent possibility that a Special Counsel investigating a sitting President might hesitate to pursue criminal charges, the public has an especially "weighty" interest in being able to assess Hur's performance of his duties—and, in particular, whether Hur "had the evidence but nevertheless pulled [his] punches." *CREW v. U.S. Dep't of Just.*, 746 F.3d 1082, 1092-93 (D.C. Cir. 2014). Releasing the materials will allow the public to assess the persuasiveness of Hur's determinations.

The Department thus notified Biden's counsel that it was planning to release the materials, and the Department coordinated with counsel to redact portions that most implicate privacy interests—for example, discussion of "sensitive topics like illness," "death," and "non-public persons."

App-017. The Department then determined that the public interest in the remaining materials outweighed Biden's residual privacy interest.

Biden moved to intervene and for a preliminary injunction prohibiting disclosure. In Biden's view, his privacy interest in the materials—in their entirety—outweighs the public interest and so the materials may be withheld under FOIA Exemption 7(C). Because the materials may be withheld under FOIA, he contends that the Privacy Act prohibits their disclosure. And he believes that he may invoke the APA to obtain review of the Department's determination to disclose them and an injunction—review and relief that FOIA and the Privacy Act do not contemplate.

The district court permitted Biden to intervene and evaluated his claims on the merits. But the court denied him relief, after reviewing in camera the relevant materials. As the court explained, the Department's bottom-line conclusion was reasonable: the public's interest in assessing Hur's declination decision outweighs Biden's privacy interest, particularly given the redactions that the Department intends to make.

Biden now seeks the extraordinary remedy of an injunction pending appeal, but he fails to meet his heavy burden of justifying that relief. In his motion, Biden has surprisingly little to say about either end of the balancing

3

test that underlay the district court's decision. He barely addresses the weighty public interest, fails to identify any specific privacy interest, and comes nowhere close to meeting his burden of showing that the court erred.

Instead, Biden focuses on various procedural arguments that are inadequate to justify the extraordinary relief sought here and are mistaken on their own terms. Biden's claims are largely premised on the doubly erroneous view that the district court afforded too much deference to the government's interest balancing and that he should obtain an injunction pending appeal for that reason, even without any serious effort to demonstrate that a proper balancing would tip in his favor—let alone that the district court abused its discretion in its own contrary balancing. That argument is especially flawed because Biden cannot properly invoke the APA to obtain judicial review and an injunction that the Privacy Act and FOIA do not contemplate—much less to obtain review more robust than the APA reasoned-decisionmaking analysis in which the court engaged.

The motion should be denied.

## STATEMENT

1. In 2023, the Attorney General appointed Hur as a Special Counsel to investigate the "possible unauthorized removal and retention of classified

4

documents or other records discovered" at locations associated with then-President Biden. *See* Office of the Attorney General, Dep't of Just., Order No. 5588-2023, *Appointment of Robert K. Hur as Special Counsel* (Jan. 12, 2023), https://perma.cc/T2BY-JJAH.

Federal regulations require that, upon concluding his work, a Special Counsel "provide the Attorney General with a confidential report explaining [his] prosecution or declination decisions." 28 C.F.R. § 600.8(c). Shortly after Hur submitted his report in February 2024, the Attorney General released the report to Congress and the public. *See id.* § 600.9 (authorizing such releases).

In that report, Hur relied repeatedly on transcripts and recordings of conversations that Biden had with a ghostwriter in 2016 and 2017 in connection with the preparation of a memoir. Those materials include 117 pages of transcripts and approximately 2.5 hours of audio (of the same conversations), which Hur curated from "dozens of hours of recorded conversations with the ghostwriter." Hur Report 5; *see also* App-447-48.

In particular, Hur relied on those materials to support two determinations. First, the Special Counsel identified "evidence that President Biden willfully retained and disclosed classified materials after his

vice presidency when he was a private citizen." *See* Hur Report 1-3. In the Special Counsel's view, the "best case" for any related "charges would rely on Mr. Biden's possession" of classified documents in 2017, when he "told [the] ghostwriter he had just found classified material" in his home. *Id.* at 4. Second, the Special Counsel declined to pursue charges. In explaining that decision, the Special Counsel emphasized his view that "Mr. Biden's memory was significantly limited" during "his recorded interviews with the ghostwriter in 2017," which would have made it difficult to prove the requisite mens rea. *See id.* at 5-6; *see also id.* at 207.

2. Plaintiffs—the Heritage Foundation and one of its employees—filed a FOIA request (and then this suit) seeking records relied on by Hur in writing his report. During the Biden Administration, the Department withheld "substantially all the transcripts and audio recordings," "relying in large part on the work-product doctrine and the privacy interests of President Biden." App-449-50. Earlier this year, "the Department reassessed its prior decision and decided to waive the work-product doctrine in light of the public interest in the materials." App-450.

Following that decision, the Department provided notice to Biden's counsel "of its preliminary view" that the materials "should be disclosed."

6

App-450. Department officials and Biden's counsel consulted about redactions of the material; that process resulted in "substantial additional redactions" beyond those the Department had initially proposed. *Id.* As the district court explained, following those "extensive redactions," the materials "contain no mention of highly sensitive topics like illness or death, nor do they mention any non-public persons, including members of Biden's family." App-017, 024-25. Instead, they "largely contain Biden's discussion of foreign policy—including his references to what may have been classified material in his possession—and his decision not to run for President in 2016." App-017.

3. Biden moved to intervene in the FOIA suit and sought a preliminary injunction barring the Department from disclosing any portion of the materials to plaintiffs, *see* App-004. As relevant here, Biden contends that disclosure is not required under FOIA because his privacy interests outweigh the public interest in disclosure, which would permit withholding the materials under Exemption 7(C). *See* 5 U.S.C. § 552(b)(7)(C) (allowing withholding of "records or information compiled for law enforcement purposes" to "the extent that the production of" such information "could reasonably be expected to constitute an unwarranted invasion of personal privacy"). Biden argues that, as a result, the disclosure is forbidden by the

Privacy Act, which generally prohibits disclosing covered records unless certain exceptions apply (including if the records must be disclosed under FOIA). *See id.* § 552a(b). And although the Privacy Act provides for injunctive relief only in other circumstances, Biden asserts that he may use the APA to seek review of the agency's decision to disclose and an injunction. *See* App-005-08.

The district court denied Biden a preliminary injunction. It agreed that it could review, through the APA, the Department's decision to disclose the relevant materials allegedly in violation of the Privacy Act. App-005-08. On the merits, however, the court upheld as reasonable the Department's conclusion that "Biden's reduced privacy interests" in the redacted materials "are outweighed by the significant public interest" in disclosure. App-011, 014 (quotation omitted).

For similar reasons, the district court concluded that the equitable factors independently weighed against a preliminary injunction. App-027. Although the court believed that Biden had identified some "irreparable injuries" from disclosure, the court emphasized that the "severity" of those injuries was "less clear." App-026. The court explained that Biden had offered "little in the way of specific details about the types of harm he

8

foresees." *Id.* Thus, the court determined that "the harm to Biden's diminished privacy interest" from the lack of an injunction is "outweighed by the public's interest in" the materials. App-027.

The district court thus denied Biden's motion. The same day, the court entered a three-week interim injunction to permit this Court "an orderly period to consider whether to grant an injunction pending appeal." App-031. The court did not grant a full injunction pending appeal. *See id.*

## ARGUMENT

A preliminary injunction may only be awarded to a party who demonstrates that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *John Doe Co. v. CFPB*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (per curiam) (quotation omitted). Where a party fails to obtain that relief and then seeks the "exceptional remedy of an injunction pending appeal," his burden is higher: he "faces the difficult task of coming forward with evidence and argument showing that it is likely that the district court abused its discretion in denying a preliminary injunction." *Id.* (alteration and quotation omitted). Biden has failed to carry that burden.

## I.     Biden Is Not Likely to Succeed on the Merits

### A.     The Government's Intended Disclosure Is Lawful

1. The core premise of Biden's motion is that releasing the disputed materials "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7). But he makes minimal effort to demonstrate that any "privacy interest at stake" "outweighs the public's interest in disclosure," App-014 (quotation omitted), instead retreating to procedural arguments that are mistaken and could not justify an injunction pending appeal.

The district court properly analyzed the relevant balance. On one side, the "unparalleled circumstances" here have resulted in "an unusually strong public interest" in the materials. App-023-24; *see* App-453-56. As explained, the Hur Report repeatedly relied on these curated materials in explaining both Hur's determination that evidence existed that Biden had unlawfully retained and disclosed classified information and his decision that pursuing criminal charges would be unwarranted. There is a "weighty public interest in shining a light on the" Special Counsel's investigation and "decision not to prosecute" the President. *CREW v. U.S. Dep't of Just.*, 746 F.3d 1082, 1093 (D.C. Cir. 2014).

That interest is particularly acute in the specific circumstances of this case. For one, because Hur's investigation centered on the then-sitting President, the public may question the basis for his decision not to pursue criminal charges. Consistent with that reality—and unlike in the usual prosecution—regulations require that a Special Counsel write a report explaining his declination decisions and authorize the Attorney General to publicly release that report. 28 C.F.R. §§ 600.8(c), 600.9(c). The public therefore has a plain interest in accessing the materials to evaluate for themselves whether Hur's conclusions were well-supported—or whether, instead, "the government had the evidence but nevertheless pulled its punches," App-020 (quoting *CREW*, 746 F.3d at 1093). That interest is heightened by Biden's own actions in "challenging the fairness, scope and propriety of the Hur Report and Mr. Hur's handling of" the relevant materials. App-018-19 (alteration and quotation omitted). And indeed, the public interest is further underscored by the "immense lay and congressional interest"—including a congressional request for the materials, *see* Mot. 5— "in the Special Counsel's Office, Hur's findings about Biden's mental state, and Hur's ultimate decision not to prosecute the sitting President." App-024.

11

Conversely, as the district court's decision properly reflects, Biden's privacy interests in the redacted materials are "greatly reduced." App-018 (quotation omitted). The Department has conducted "substantial redactions" of "sensitive topics like illness," "death," and "non-public persons." App-017; *see also* App-451-53. And although Biden asserted a privacy interest in his "discussion of certain topics and other public figures," the Department properly concluded "that Biden's privacy interests" in the remaining materials are diminished because much of the same material is already discussed by the Hur Report or in Biden's memoir. *See* App-018.

2. As noted, Biden barely responds. He devotes a scant three pages of his motion to the balance of interests, and in that section provides only broad abstract statements—often improperly substituting citations to portions of his district-court briefing for the development of an argument.

Accordingly, the key pillars of the district court's reasoning stand essentially unchallenged. Biden does not dispute that the public has a substantial interest in being able to assess Hur's performance of his duties. Instead, Biden only asserts in a single paragraph (Mot. 15-16) that these materials "have minimal bearing" on that interest. But that unelaborated assertion is plainly incorrect. Hur's public report repeatedly relied on his

evaluation of the materials at issue here. The public has an interest in accessing the underlying materials to assess that evaluation.

Similarly, on the other side of the scale, Biden fails to identify any substantial privacy interest. Biden does not dispute that the Department has extensively redacted—following consultations with Biden's counsel—the most personally sensitive portions. And although Biden asserts generally that he viewed the "conversations as a whole" as "private," Mot. 14, he does not identify any specific material as triggering a substantial privacy interest that would outweigh the public's interest.

Even weaker is Biden's claim to a "privacy interest in his voice." Mot. 14-15. The only case that Biden cites for that proposition is inapposite; it holds only that vocal recordings (in that case, of astronauts on the Challenger shuttle in the moments before their deaths) may reflect information that "applies to particular individuals" that could be eligible for protection under FOIA Exemption 6, *see New York Times Co. v. NASA*, 920 F.2d 1002, 1004 (D.C. Cir. 1990) (en banc). It does not suggest that individuals have a freestanding substantial privacy interest in their "voice"—much less that a high-profile individual whose voice has been recorded and published repeatedly has such an interest. Nor does Biden otherwise explain how his

13

vocal tone or inflection in these particular audio records might constitute such highly personal information. And regardless, any such privacy interest would be outweighed in this case by the countervailing public interest, given Hur's repeated reliance on Biden's "tone." *See* App-452-53.

Biden further errs by minimizing the fact that much of the relevant substance has already been disclosed in the Hur Report and Biden's memoir. His insistence on "an exact match" between the already-public materials and these materials, Mot. 15, relies on a case about a separate "public domain doctrine," under which "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Kowal v. U.S. Dep't of Just.*, 107 F.4th 1018, 1030 (D.C. Cir. 2024) (quotation omitted). Biden cites no authority undermining the more modest proposition—relied on by the Department here—that privacy interests are diminished when dealing with material that is already public in substance. To the contrary, Biden himself relies on the fact that similar materials "are already in the public domain," Mot. 16, in arguing that the public interest in disclosure is lessened. And regardless, insofar as there is not "an exact match" to already-public materials, that strengthens the public interest in disclosure of those unique materials far more than it does

the privacy interest in non-disclosure for an individual who has willingly injected himself into the public sphere.

Finally, Biden's assertion that law-enforcement information about an individual gives rise to a weighty privacy interest as a general matter, Mot. 14, makes no effort to account for the unique circumstances of this case, which involves a Special Counsel's investigation into a sitting President. Once again, Biden cannot prevail on a fact-intensive balancing test without meaningfully engaging with the relevant facts.

### B.   Biden's Attempt to Seek De Novo Review of FOIA Disclosures and an Injunction to Enforce the Privacy Act Is Misguided

Largely leaving unrefuted the balancing that the district court treated as dispositive, Biden devotes the vast majority of his motion to procedural issues. In particular, he urges that even if the Department acted reasonably, the Department should be precluded from releasing materials if a district court would have conducted the balancing differently. That is true, according to Biden, because some amalgamation of FOIA, the Privacy Act, and the APA gives rise to a right to de novo review of the Department's decision to disclose documents under FOIA. That result would be fundamentally incompatible with the limitations that Congress has embedded in those

statutes. And regardless, if the Department acted reasonably, then the district court did not likely abuse its discretion in balancing the equities the same way, which alone forecloses an injunction pending appeal.

1. Biden may not use the APA to seek an injunction enforcing his asserted rights under the Privacy Act. The APA does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. That carve-out "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012).

Here, Biden invokes the APA to obtain injunctive relief enforcing his asserted Privacy Act right to non-disclosure of the materials. But the Privacy Act contains its own reticulated remedial scheme that permits a party to obtain an injunction in only two circumstances: where the party asks an agency to amend a record or seeks access to a record. *See* 5 U.S.C. § 552a(g)(2)-(3). For all other violations of the statute—including violations of the prohibition on disclosure that Biden invokes—the Privacy Act allows only suits for money damages for "intentional or willful" violations. *See id.* § 552a(g)(4); *see also Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1122

(D.C. Cir. 2007) (holding that "only monetary damages, not declaratory or injunctive relief, are available to" parties invoking the Privacy Act's "catch-all provision creating a civil cause of action for violations" of the statute). Congress thus elected not to authorize suits for injunctive relief, or damages remedies at the back end, that could preclude or chill the government from making good-faith releases of information.

In short, Congress included within the Privacy Act a reticulated remedial scheme reflecting Congress's determination that injunctive relief should be available for only some asserted violations of the statute. In the context of that reticulated remedial scheme, "the omission" of any provision allowing injunctive relief to prohibit disclosures "is sufficient reason to believe that Congress intended to foreclose" such relief. *Block v. Community Nutrition Inst.*, 467 U.S. 340, 347 (1984). Thus, the Privacy Act "impliedly forbids the relief" that Biden seeks, 5 U.S.C. § 702, and "preclude[s] judicial review" under the APA, *id.* § 701(a)(1), that would end-run the Privacy Act's own limitations on injunctive relief.

The district court's contrary conclusion was primarily premised on its belief that the Privacy Act's damages provision does not provide an "adequate remedy" in this context. App-006-07 (quoting 5 U.S.C. § 704). But

17

"[t]he APA's waiver of sovereign immunity" contains "several limitations"; thus, a party must show both that "an adequate remedy for its claims is not available elsewhere" and also that "its claims do not seek relief expressly or impliedly forbidden by another statute." *Tucson Airport Auth. v. General Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998); *see also* App-420-24 (raising both arguments).

Regardless whether the Privacy Act remedies that Congress has provided are "inadequate" in some sense, they are necessarily adequate to preclude additional remedies under the APA. They reflect Congress's own determination about the limited scope of relief appropriate for violations of the Privacy Act. Similarly, for example, this Court has held that the Tucker Act, which allows parties to bring contract claims for damages, precludes seeking "the classic contractual remedy of specific performance" under the APA. *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). Likewise, the Civil Service Retirement Act's reticulated "remedial structure" for challenging personnel actions precludes seeking relief "under the APA for an employment claim as to which the CSRA provide[s] no relief." *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005). In other words, "what you get under the CSRA is what you get." *Id.* So too here.

18

Nor is it relevant that the Privacy Act does not "explicitly forbid" the equitable relief that Biden seeks. App-007. Neither did the statutes at issue in *Block* or *Spectrum Leasing* or *Fornaro*. APA suits are forbidden if another statute "impliedly"—not just "expressly"—"forbids the relief which is sought." 5 U.S.C. § 702. And the clear implication of the Privacy Act's remedial scheme—like the schemes at issue in the cases discussed above—is that equitable relief is unavailable in these circumstances.

Although Biden cites (Mot. 8) various cases that he says are "consistent with" the argument that he can enforce Privacy Act rights through the APA, he seems to recognize that most of those cases do not address the relevant question. And the one case of this Court that he does cite undercuts his argument. That case made clear that "the Privacy Act does not authorize entry of injunctive relief" barring disclosure. *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988). The Court thus permitted the plaintiff to invoke the APA only as a mechanism for enforcing his rights under the Veterans' Records Statute—a different statute barring disclosure that incorporated some *substantive* standards from the Privacy Act but did not borrow the *remedial scheme* or contain its own, as would be needed to preclude invocation of the APA. *See id.* at 1465-67.

19

2. Separate from the Privacy Act, Biden also argues (Mot. 16-19) that he can directly invoke FOIA to seek review of the reasonableness of the Department's disclosure decision. But as the district court correctly concluded, an agency's decision to disclose under FOIA is committed to agency discretion by law. *See* App-008-10.

FOIA's "basic purpose" is "to open agency action to the light of public scrutiny," because "a democracy cannot function unless the people are permitted to know what their government is up to." *U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772-73 (1989) (emphasis and quotation omitted). Consistent with that purpose, "FOIA is exclusively a disclosure statute"; it does "not limit an agency's discretion to disclose information," even if that information may be withheld pursuant to an exemption. *Chrysler Corp. v. Brown*, 441 U.S. 281, 292-94 (1979). Thus, FOIA "does not afford" a party "any right to enjoin agency disclosure." *Id.* at 294.

In other words, as the district court properly explained, absent other enforceable "constraints on disclosure," an agency's decision to disclose in response to a FOIA request is committed to agency discretion by law and not properly subject to APA review. App-008-10. Biden's attempt to nonetheless

have the courts engage in searching review of both the applicability of Exemption 7(C) and the Department's explanation for its determination to disclose would undermine FOIA's nature as a disclosure statute. And regardless, the Department's decision was reasonable, as explained, and the court did review it under the APA's standards. Biden thus cannot claim any error warranting an injunction.

That conclusion is particularly obvious with respect to Biden's claim that disclosure should be enjoined if "reasonable minds could differ" about whether the public interest in the materials outweighs his privacy interest. Mot. 19. That novel argument—for which Biden cites no supporting precedent—is incompatible with FOIA's nature as a statute fundamentally concerned with disclosure. In that context, the relevant statutory language permitting withholding only where disclosure "could reasonably be expected" to invade personal privacy, 5 U.S.C. § 552(b)(7), is most naturally understood as a limit on withholding—not as an invitation to private parties to obtain injunctions against disclosure whenever reasonable minds could differ.

3. This Court need not agree with the government that APA review is precluded altogether to deny this motion, however, because Biden's argument asks this Court to provide for de novo review of the applicability of

Exemption 7(C)—presumably with respect to each segregable part of the materials—rather than reviewing the Department's decision under the APA's reasoned-decisionmaking standards. The basis for that argument is his view (Mot. 10-11) that the Privacy Act itself creates a freestanding legal prohibition on disclosure. That contention makes his end-run around the Privacy Act's remedial scheme complete by asserting that he may obtain through the APA the exact injunction that Congress declined to authorize in the Privacy Act.

Moreover, the Privacy Act not only provides no right to injunctive relief in these circumstances, but it also provides that damages are only available for "intentional or willful" violations. 5 U.S.C. § 552a(g)(4). Congress has thus decided that there should be *no* Privacy Act remedy where an agency discloses records after reasonably—even if erroneously—determining that they are not subject to withholding under FOIA. Biden's assertion that the courts should evaluate Exemption 7(C)'s applicability de novo is fundamentally incompatible with that congressional choice.

Biden also briefly suggests (Mot. 20) that the Department's explanation was unreasoned and that the district court has relied on a post hoc explanation. That suggestion is so underdeveloped as to be forfeited. But

in any event, the court tackled this argument head-on, identifying the Department's contemporaneous explanation and explaining why it was appropriate for the Department to submit a declaration from the same official fleshing out that explanation. *See* App-011-13. There was no error.

4. In all events, Biden cannot demonstrate that the district court abused its discretion in denying him a preliminary injunction, because the equitable factors do not obviously tip in his favor. Even if Biden were correct that he was entitled to de novo review of the Department's decision or that the district court misapprehended the scope of available review, the district court's balancing of the relevant equities may be reversed only if the court abused its discretion. *See John Doe Co.*, 849 F.3d at 1131-32.

Thus, to show that he is likely to succeed in his appeal, Biden must demonstrate that the district court likely abused its discretion in balancing the equities, wholly apart from the merits. *Cf. In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 126 (D.C. Cir. 2020) (Katsas, J., concurring) (explaining that a court of appeals may reverse the grant of a preliminary injunction if—"[w]holly apart from the merits"—the "district court's equitable balancing constituted an abuse of discretion"). That double

burden on the independent equitable and merits analyses is indeed why an injunction pending appeal is so exceptional. *See* 849 F.3d at 1131-32.

Notwithstanding this formidable burden, Biden barely engages with the relevant balancing of the interests implicated by disclosure or attempts to show that the district court abused its discretion on this point. In particular, Biden's discussion of the balance of interests (Mot. 21-23) fails to identify any specific or substantial harm that he believes release would occasion, relying instead on nothing more than generic assertions of privacy. It is plain that Biden has not met the "difficult" burden required to obtain the "exceptional remedy of an injunction pending appeal." *John Doe Co.*, 849 F.3d at 1131.

## II.    The Remaining Factors Counsel Against an Injunction Pending Appeal

For similar reasons, Biden cannot establish that an injunction pending appeal is warranted based on the equitable factors. Indeed, as just explained, the relevant balancing of the equities tips in favor of the public interest in disclosure rather than Biden's asserted interest.

Perhaps recognizing his inability to satisfy the traditional requirements for injunctive relief, Biden repeatedly attempts (Mot. 16, 21, 23) to water down that standard, contending that an injunction pending

24

appeal is warranted simply "to preserve the status quo" or avoid mooting this appeal. Biden is wrong. As this Court has recently made clear even in the context of preliminary injunctions in district court, a party seeking an injunction "must show" that the traditional test is met—including that there is a "likelihood of success on the merits"—and cannot establish an entitlement to relief based on "amorphous considerations more appropriate when determining whether to issue an administrative stay." Order 1 n.*, *Kingdom v. Trump*, No. 26-5181 (D.C. Cir. June 17, 2026) (per curiam) (quotation omitted).

That key distinction—between a stay and an injunction—explains why the precedent upon which Biden relies most heavily is inapplicable here. When a court grants a stay, it "simply suspends judicial alteration of the status quo." *Nken v. Holder*, 556 U.S. 418, 429 (2009) (alteration and quotation omitted). In that context, it may be appropriate for the court to rely on considerations including the desire to preserve a party's ability to seek appellate review. *See John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989) (Marshall, J., in chambers).

By contrast, when a court grants an injunction, it is "grant[ing] judicial intervention that has been withheld by lower courts." *Nken*, 556 U.S. at 429

25

(quotation omitted). Indeed, for that reason, the Supreme Court has held that a request for an injunction "demands a significantly higher justification than a request for a stay." *Respect Maine PAC v. McKee*, 562 U.S. 996, 996 (2010) (quotation omitted). And here, that judicial intervention would reflect an "intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers). Such an intrusion must be justified, at minimum, by the four-factor showing for injunctions pending appeal. Biden barely even attempts to make that showing here.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for an injunction pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
   *Assistant Attorney General*

DANIEL TENNY

*/s/ Sean R. Janda*

SEAN R. JANDA
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7260*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-3388*

June 2026

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5158 words. This response also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in CenturyExpd BT 14-point font, a proportionally spaced typeface.

/s/ Sean R. Janda
SEAN R. JANDA