# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————

**No. 26-5235**

**September Term, 2025**

**1:24-cv-00645-DLF**

**Filed On:**    **July 20, 2026**

Heritage Foundation and Mike Howell,

       Appellees

     v.

United States Department of Justice,

       Appellee

Joseph R. Biden, Jr.,

       Appellant

**BEFORE:**    Srinivasan, Chief Judge, and Katsas and Pan\*, Circuit Judges

## O R D E R

Upon consideration of the emergency motion for an injunction pending appeal, the responses thereto, the reply, and the materials described in the notice of ex parte filing, it is

**ORDERED** that the motion for an injunction pending appeal be denied. Appellant has not satisfied the stringent requirements for an injunction pending appeal. *See John Doe Co. v. CFPB*, 849 F.3d 1129, 1131 (D.C. Cir. 2017); *see also* D.C. Circuit Handbook of Practice and Internal Procedures 33 (2025). It is

**FURTHER ORDERED**, on the court's own motion, that this court's administrative injunction entered July 10, 2026, is hereby extended to August 3, 2026, to allow Appellant, if he wishes, to seek further review.

Appellant Joseph R. Biden, Jr. seeks an injunction pending appeal to prevent disclosure of transcripts and audio recordings of conversations he had in 2016 and 2017 with his writing partner Mark Zwonitzer while preparing Biden's 2017 memoir. In 2023, the Attorney General appointed a Special Counsel to investigate then-President Biden's

---

\* Circuit Judge Pan would grant the emergency motion for an injunction pending appeal for the reasons stated in the attached dissenting statement.

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 26-5235**                                              **September Term, 2025**

handling of classified information during and after his previous tenure as Vice President. The Department of Justice (DOJ) obtained the recordings of the conversations between Biden and Zwonitzer under an agreement limiting their use to the Special Counsel's investigation, and the Special Counsel prepared transcripts of the recorded conversations. The Special Counsel's investigation concluded with a decision not to bring charges.

In 2024, the Heritage Foundation and Mike Howell (Plaintiffs) brought an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, for the transcripts and recordings. DOJ initially withheld the bulk of the requested materials, citing several FOIA exemptions. In February 2026, however, DOJ reversed course and represented that it intended to disclose the materials, with redactions, to Plaintiffs and the House Judiciary Committee. Biden intervened and sought a preliminary injunction against disclosure, which the district court denied. Biden noticed an appeal of the denial of the preliminary injunction, and he then filed a motion for an emergency injunction pending appeal, which we consider here.

To obtain a preliminary injunction, Biden "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Because Biden "seeks the exceptional remedy of an injunction pending appeal," he "faces the difficult task of coming forward with evidence and argument showing that it is 'likel[y]' that the district court 'abused its discretion' in denying a preliminary injunction." *John Doe Co.*, 849 F.3d at 1131 (citations omitted). Biden does not argue that he can obtain an injunction pending appeal without needing to "establish that he is likely to succeed on the merits." *Winter*, 555 U.S. at 20. *But see* Dissent 1 (advocating such an approach). Rather, he argues throughout that he is likely to succeed on the merits, and in response to DOJ's submission that he "must show" a likelihood of success, DOJ Resp. 23–24, he urges application of the standard likelihood test set out in *Winter*, Reply 3 (citing *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 16–21 (2020)). Because we conclude he has not made that showing, we deny his motion.

Plaintiffs and DOJ raise several threshold arguments for why we should deny Biden's motion, including an argument that he cannot seek injunctive relief on his Privacy Act claim through the Administrative Procedure Act (APA). Because we conclude that Biden has not shown a likelihood of success on the merits even if such an APA claim is available, we assume without deciding that the district court was correct that Biden can likely seek injunctive relief on his Privacy Act claim through the APA. *See* App-007. Biden raises his own threshold argument; he contends that the district court erred in

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 26-5235**                                    **September Term, 2025**

applying deferential arbitrary-and-capricious review to DOJ's disclosure decision rather than applying the statutory standard de novo.   Again, we need not resolve this dispute because we conclude that, even under a de novo standard, Biden has not met his burden to show a likelihood of success on the merits.

The central question on the merits is whether Biden is likely to succeed in showing that a FOIA exemption applies to the requested materials and that the Privacy Act thus bars their disclosure.   While the requested recordings were not government records when originally created by Zwonitzer and Biden in connection with the preparation of Biden's 2017 memoir, it is undisputed that they became subject to FOIA's disclosure mandate when the Special Counsel obtained possession of them as part of his investigation.   Biden contends that the requested materials are exempt from disclosure under FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6), (b)(7)(C).   Because Exemption 7(C) is broader than Exemption 6 in relevant respects, we consider only the former.   *See Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

Exemption 7(C) protects law-enforcement records that, if disclosed, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).   That standard calls for balancing the personal privacy interests at stake against the public interest in disclosure.   *See Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 171 (2004); *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989); *Citizens for Resp. & Ethics in Wash. (CREW) v. U.S. Dep't of Just.*, 746 F.3d 1082, 1091 (D.C. Cir. 2014).   We conclude that Biden has failed to demonstrate a likelihood that Exemption 7(C) requires withholding of the requested materials.

First, our precedents compel concluding that the public interest in disclosure of the requested materials is substantial.   The public has a "weighty" and "significant" interest in "shining a light" on the Special Counsel's investigation of a former Vice President for alleged mishandling and disclosure of classified information.   *CREW*, 746 F.3d at 1092–93 (citation omitted).   When a highly visible investigation of a prominent public figure ends in a decision not to charge, the public has a strong interest in evaluating "whether the government had the evidence but nevertheless pulled its punches."   *Id.* at 1093.

The requested materials are germane to that interest.   The Special Counsel relied on the requested materials both in concluding that Biden had retained classified material after leaving the vice presidency and in ultimately declining to bring charges.   *See, e.g.*, Robert K. Hur, *Report on the Investigation Into Unauthorized Removal, Retention, and Disclosure of Classified Documents Discovered at Locations Including the Penn Biden Center and the Delaware Private Residence of President Joseph R. Biden, Jr.* 1, 4–9,

Page  3

# United States Court of Appeals
### For The District of Columbia Circuit
_____

## No. 26-5235                                    September Term, 2025

100–06, 108–11, 206–07, 236–37 (2024) (Special Counsel Report), https://perma.cc/ZB6E-NYKR. Biden does not dispute that the Special Counsel Report relied on the requested materials in assessing whether charges were appropriate, nor does he dispute that the public has an interest in evaluating the Special Counsel's conduct of the investigation. Because the requested materials would bear on understanding and assessing the Special Counsel's investigation and his ultimate decision, disclosure of the materials "is likely to advance" the public interest at stake. *CREW*, 746 F.3d at 1093 (quoting *Favish*, 541 U.S. at 172). While our dissenting colleague suggests that the Special Counsel's description of some of the materials in his Report diminishes the public interest in disclosure of the materials, the public interest under our decisions, *see id.*, lies in the ability to examine the materials themselves to assess the Special Counsel's characterizations of them and reliance on them in his decision.

With respect to Biden's personal privacy interest, we recognize that he has a personal privacy interest in his conversations with his writing partner in his home. DOJ's redactions, however, meaningfully narrow the requested disclosure's incursion on that interest. The district court found that DOJ had conducted "extensive redactions," App-015, such that the redacted materials "contain no mention of highly sensitive topics like illness or death, nor do they mention any non-public persons, including members of Biden's family," App-017. After the redactions, the district court determined, the materials "largely contain Biden's discussion of foreign policy . . . and his decision not to run for President in 2016." *Id.* The district court further determined that much of the remaining content has already been made public through the Special Counsel Report and Biden's 2017 memoir, reducing the personal privacy interest in withholding the materials. *See* App-018. Biden does not dispute the district court's characterization of the redactions or the public nature of the remaining materials. Nor does Biden argue that, after the redactions, specific portions of the remaining materials continue to present special personal privacy concerns as compared with the rest and thus should be withheld even if disclosure is otherwise warranted. We conclude that any remaining incursion on personal privacy from disclosure of the now-redacted materials likely does not outweigh the public interest in disclosure. In that regard, although there is generally a substantial privacy interest in not being identified as the target of an investigation that results in no charges, *see* Dissent 3, DOJ announced the Special Counsel's appointment and the purpose of his investigation, and the Special Counsel Report describes at length that Biden was investigated for allegedly retaining and disclosing classified materials.

Biden also briefly notes in his motion an additional argument (which he does not reiterate in his reply brief) concerning the audio recordings alone, contending that he has a "separate privacy interest in his voice." Mot. 15. Biden, however, is a public figure whose voice has been "constantly exposed to the public." *United States v. Dionisio*, 410

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 26-5235**                                          **September Term, 2025**

U.S. 1, 14 (1973).   And he does not argue that there may be particular portions of the audio recordings that carry a heightened privacy interest in his voice and thus would require a correspondingly heightened public interest for disclosure.   The Special Counsel Report, moreover, specifically relied in certain places on impressions formed from the recordings that would not be as apparent from the transcript alone.   *See* Special Counsel Report, *supra*, at 4–5, 110, 206–07.

For these reasons, we conclude that Biden has not shown a likelihood that the requested materials must be withheld from disclosure under the balancing analysis called for by Exemption 7(C).   While our colleague suggests that this conclusion is out of step with our decisions, *see* Dissent 2, we have previously authorized disclosure of materials against the invocation of Exemption 7(C) when relevant to the public's ability to assess a Special Counsel's investigation.   *See Elec. Priv. Info. Ctr. v. U.S. Dep't of Just.*, 18 F.4th 718, 721–22 (D.C. Cir. 2021).   As for the suggestion that DOJ in its district court briefing conceded the reasonableness of DOJ's previous decision to withhold releasing the bulk of the requested materials, *see* Dissent 5, DOJ has since made the material redactions described above, altering the Exemption 7(C) balance.

Finally, Biden separately contends that DOJ's disclosure decision is arbitrary, capricious, and an abuse of discretion in violation of the APA.   We agree with the district court's conclusion that these claims are unlikely to succeed:   DOJ displayed awareness that it was changing position, explained that its reason for doing so was in part based on its making additional redactions to the requested materials, and reasonably weighed the interests at stake.   *See* App-011–20; *see also* App-362–63.

We accordingly conclude that Biden has not shown a likelihood that the requested materials must be withheld from disclosure.   And because he has not shown a likelihood of success on the merits, there is no occasion to address the remaining injunction factors.

The motion for an injunction pending appeal is denied.

**<u>Per Curiam</u>**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:    /s/
Lynda M. Flippin
Deputy Clerk

PAN, *Circuit Judge*, dissenting:

I respectfully dissent from the court's denial of an injunction pending appeal. At this stage of the proceedings, former President Biden "is not required to prove his case in full," *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981), and our task is not to "conclusively determine the rights of the parties" — rather, we should merely "balance the equities as the litigation moves forward." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) (per curiam). But this litigation will not move forward, and Biden will never get the chance to secure a ruling on the merits of his substantial arguments: The court's denial of the injunction will result in the premature release of Biden's concededly private conversations, and this case will be rendered moot.

My colleagues in the majority do not address the mootness problem, apparently because they think it is relevant only to whether a denial of the injunction will irreparably harm Biden. They instead focus exclusively on his likelihood of success on the merits, which they view as an independent and sufficient basis to deny the injunction. *See* Order at 2. I would consider the preliminary-injunction factors more flexibly under the well-established "sliding scale" approach, which provides that when the other equities weigh in a movant's favor, and he can show irreparable harm, he "need not necessarily show a 51% likelihood of success." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009). Our court has never overturned that approach, *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016), and even if Biden has not explicitly relied on it, I am doubtful that he has forfeited the applicable standard of review. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 779 (2024) (Alito, J., concurring) (collecting cases).

In any event, I disagree with my colleagues' evaluation of Biden's likelihood of success on the merits.

2

My colleagues and I agree that our analysis turns on Biden's invocation of FOIA Exemption 7(C), which permits the government to withhold information obtained in a criminal investigation when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Notably, this statutory standard is weighted in favor of privacy. We consistently have emphasized that Exemption 7(C) presents a lower bar to withhold information than other FOIA exemptions. *See, e.g.*, *Bast v. DOJ*, 665 F.2d 1251, 1254 (D.C. Cir. 1981); *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 n.5 (D.C. Cir. 2015). In fact, DOJ's briefing identifies no case in which we have held that a withholding of specific information under Exemption 7(C) was improper.

Under the governing legal framework, Biden is likely to succeed on the merits if it is *likely* that the invasion of his privacy *could reasonably be expected* to be *unwarranted*. We must first evaluate Biden's relevant privacy interest, then determine "what factors," if any, "might *warrant* an invasion of the interest." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 771 (1989) (emphasis in original). That is how we "balance the public interest in disclosure against the interest Congress intended the Exemption to protect." *Id.* at 776. My colleagues seem to overlook the governing legal standard: They simply hold that "any remaining incursion on personal privacy from disclosure of the now-redacted materials likely does not outweigh the public interest in disclosure." Order at 4. Their analysis appears to give no effect to the statute's "could reasonably be expected" language.

In my view, Biden has shown a substantial privacy interest. The conversations at issue took place in Biden's home, and the recordings of them were obtained by the government in the course of a criminal investigation that did

3

not lead to an indictment. We generally are "reluctant to disparage the privacy of the home, which is accorded special consideration in our Constitution, laws, and traditions." *DOD v. FLRA*, 510 U.S. 487, 501 (1994). Although some of the most sensitive parts of the conversations have been redacted, the topics discussed indicate that Biden viewed the communications as private. Revealing even redacted versions to the world will "interfere with" Biden's "reasonable expectations of undisturbed enjoyment in the solitude and seclusion of" his home. *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 876 (D.C. Cir. 1989). Even though the conversations were with an author who was helping Biden to write his memoir, Biden presumably had editorial control over the contents of the book and could decide what information ultimately would be made public — he had no expectation that recordings or transcripts of hours of private conversation, across several sessions, would someday be released over his objection.

Moreover, Biden deserves special solicitude as the target of an investigation who ultimately was not charged with any crime. We have held that "the decision not to prosecute insulates individuals who have been investigated but not charged" from the "significant intrusion into their lives" that public association with a criminal investigation entails, and that release of such information "represents a severe intrusion on the privacy interests of the individuals in question and should yield only where exceptional interests militate in favor of disclosure." *Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*, 656 F.2d 856, 864–66 (D.C. Cir. 1981). That interest is "potentially augmented by the fact that the individual is a well known figure." *Id.* at 865; *see also Citizens for Resp. & Ethics in Wash. v. DOJ* (*CREW*), 746 F.3d 1082, 1096 (D.C. Cir. 2014) (recognizing a "substantial privacy interest" in public official's information).

4

Given Biden's substantial privacy interest in the recorded conversations, we must next consider whether public disclosure at this time is "warranted" due to "exceptional" countervailing interests. 5 U.S.C. § 552(b)(7)(C); *Fund for Const. Gov't*, 656 F.2d at 864–66. The asserted public interest lies in understanding Special Counsel Robert Hur's report declining to charge Biden, and the value in determining whether Hur's team "had the evidence [to indict] but nevertheless pulled its punches." Heritage Found. Br. 14 (quoting *CREW*, 746 F.3d at 1093). But Hur's report itself has resulted in "voluminous information already in the public domain," so the public "interest is greatly reduced." *Jud. Watch, Inc. v. Nat'l Archives & Recs. Admin.*, 876 F.3d 346, 350 (D.C. Cir. 2017). And Hur based his evaluation of Biden's mental state on several overlapping considerations, including Biden's "interview with [Hur's] office in 2023," and the prospect that "Biden would likely present himself to a jury . . . as a sympathetic, well-meaning, elderly man with a poor memory." Robert K. Hur, *Report on the Investigation into Unauthorized Removal, Retention, and Disclosure of Classified Documents Discovered at Locations Including the Penn Biden Center and the Delaware Private Residence of President Joseph R. Biden, Jr.* 5, 6 (2024). In my view, the cumulative nature of the evidence at issue and the ample information already in the public sphere diminish the public interest in the disclosure of the conversations at issue.

In determining whether disclosure is "warranted," my colleagues in the majority neglect to consider the procedural posture of this case and the timing of the disclosure. Even if the substantial competing interests might ultimately weigh in favor of releasing the materials, there is no urgency that requires revealing them at this time. After all, the Hur investigation took place two years ago, and the government does not identify any surge of renewed interest in Hur's report.

5

Nevertheless, by denying an injunction pending appeal, the court effectively rules in favor of immediate disclosure of the disputed conversations. That, of course, will moot this case: The sole issue being litigated is the propriety of releasing the materials under FOIA and the Privacy Act, and no case or controversy will remain once disclosure has already occurred. While potential mootness ordinarily is not relevant to a movant's likelihood of success on the merits, the statutory standard makes it potentially relevant here: We are determining whether the disclosure "could reasonably be expected to constitute an *unwarranted* invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (emphasis added). In my view, it is presently "unwarranted" to snuff out Biden's case by releasing private information without the benefit of merits briefing and oral argument, and to "conclusively determine the rights of the parties" without full and fair consideration of the substantial arguments on both sides. *Int'l Refugee Assistance Project*, 582 U.S. at 580.

Finally, I note that DOJ has made a significant concession: It stated in the court below that it is "reasonable" to think that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." App. 409. DOJ told the district court that its own earlier view — the same view Biden now advances — "withstand[s] judicial scrutiny," adding "that reasonable people in different administrations might weigh the relevant factors in different ways." *Id.* In denying Biden's injunction motion, the majority essentially concludes that Biden's concededly "reasonable" position is nonetheless not "likely" to be correct. I would not end this case and override Biden's substantial privacy interests based on such a minute distinction: We should give Biden a chance to litigate his case in full, so that the court can "conclusively determine the rights of the parties." *Int'l Refugee Assistance Project*, 582 U.S. at 580.